# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JOSHUA LEE HOSKINS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No.  3:20-cv-00575-GCS** |
| ) | |
| **CAITLIN HESS,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Pending before the Court is Defendant Hess's motion for summary judgment. (Doc. 132, 133).[1] Plaintiff opposes the motion. (Doc. 135). Based on the reason delineated below, the Court **GRANTS** the motion for summary judgment.

On June 16, 2020, Joshua Lee Hoskins, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Dixon Correctional Center ("Dixon"), brought this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while he was housed at Pinckneyville Correctional Center ("Pinckneyville"). He requests monetary and injunctive relief. (Doc. 1).

---

[1]      Defendant Hess also filed the required Federal Rule of Civil Procedure 56 notice informing Plaintiff of the consequences of failing to respond to the motion for summary judgment and what is required in responding to the motion for summary judgment. (Doc. 134).

Plaintiff makes the following allegations. On several occasions between June and August 2019, Plaintiff complained to Defendant Caitlin Hess about several medical conditions, including spider bites, rashes, boils, swelling, headaches, and blisters. (Doc. 1, p. 48). Defendant Hess refused to provide Plaintiff with any care because she disliked the fact that he had filed grievances against security personnel. *Id.* Defendant Hess also told Plaintiff she had arranged it so that no other medical staff would provide him with care. *Id.* Defendant Jana Rueter stated essentially the same thing on numerous occasions between October 2019 and February 2020. *Id.* Plaintiff also spoke with Defendants Bob Blum (a nurse practitioner) and Dr. Percy Myers (the Medical Director at Pinckneyville) between October 2019 and February 2020 regarding several medical conditions, which included those cited above, as well as bleeding from his rectum. *Id.* They refused to provide him with medical care because it was too much paperwork, and they had been informed about his complaints regarding staff. *Id.*

The Court conducted the required review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A. (Doc. 19). The Screening Order allowed Plaintiff to proceed with the following: an Eighth Amendment deliberate indifference to a serious medical condition claim against all Defendants (Count 1); and a First Amendment retaliation claim against all Defendants (Count 2). *Id.* On February 11, 2022, the Court granted in part and denied in part Defendants' motion for summary judgment regarding exhaustion of administrative remedies. (Doc. 107). The Court granted the motion as to the claims against Defendants Rueter, Myers, and Blum and dismissed those claims without prejudice; it also denied the motion as to the claims against Defendant Hess. *Id.*

Thereafter, Defendant Hess filed the motion for summary judgment. Defendant Hess maintains that she is entitled to summary judgment as Plaintiff cannot set forth any admissible evidence of each of his claims against her. Specifically, Defendant Hess asserts that she never saw Plaintiff in a Nurse Sick Call appointment, and as such, she never had an opportunity to refuse him medical care. Further, Defendant Hess asserts that there is no evidence to support Plaintiff's claim that she prevented Plaintiff from seeing other medical professionals. For example, Plaintiff received medical care from Dr. Myers regarding his jaw. Lastly, Defendant Hess asserts that there is no evidence that Plaintiff suffered a deprivation due to retaliation as she had no authority to require others to deny medical care, and Plaintiff did, in fact, obtain medical care. Defendant Hess contends that there is no evidence to support Plaintiff's claims except his own self-serving statements.

Plaintiff counters that Defendant Hess was deliberately indifferent to his serious medical needs in that she denied him medical care for his health issues. Defendant Hess also retaliated against him by stating she would not treat him medically, by telling others not to treat him, and by him not receiving medical treatment. Plaintiff maintains that he had no reason to lie about having various health issues.

### UNDISPUTED FACTS

The following facts are taken from the record and presented in the light most favorable to Plaintiff, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

During the relevant times alleged in the complaint, Plaintiff was housed in Pinckneyville.

Defendant Hess was employed by Wexford Health Sources, Inc., from October 2018 until November 2022, as a licensed practical nurse ("LPN"). As a nurse, Defendant Hess performed "Nurse Sick Call" appointments at certain times. At such appointments, she tended to inmates who had one or more medical complaints; she also provided nursing care.

At Pinckneyville, an inmate seeking health care should submit a request for a Nurse Sick Call appointment unless the inmate has an emergency that requires immediate care.

From June 2019 to February 2020, Defendant Hess did not do any Nurse Sick Call appointments at Pinckneyville. Defendant Hess never had a Nurse Sick Call with Plaintiff. She did not have any such appointments scheduled, and she never received a request to attend a Nurse Sick Call appointment with Plaintiff. (Doc. 133-4, p. 6, 7, 8, 10, 26). Defendant Hess never received a report of a medical emergency from Plaintiff. (Doc. 133-1, p. 2).

Defendant Hess did not have the authority to direct any staff to deny Plaintiff medical or nursing case. (Doc. 133-1, p. 2). Defendant Hess did not have the authority to reassign Plaintiff from one cell to another. *Id.* Defendant Hess did not have supervisory authority over staff at Pinckneyville. *Id.*

On August 20, 2019, Grievance Officer S. Mercier issued a response to a grievance filed by Plaintiff which complained about laundry services, denial of showers, denial of human necessities, conditions of his cell, staff telling him to refuse all mental health treatment, and medication and dental issues/supplies. In this grievance, Plaintiff

requested a policy to ensure that offenders must sign when laundry is sent out and sign again when laundry is returned. As to the merits of this grievance, Officer Mercier specifically found:

> Per R5 Lt: Laundry was started on 7/31/19 and returned 8/1/19. Lt Wall denies the allegations of falsifying documents. The offender transferred to Pinckneyville on 6/5/19. All offenders are given a toothbrush and toothpaste on arrival. The offender made purchases at Commissary in July and August. He is not indigent and needs to buy hygiene supplies himself if he wants them. If the offender needs dental attention, he needs to submit a request to Healthcare. An email was sent on the offender's behalf on 8/20/19 informing them of his issues stated in this grievance. He has not been to Dental since arriving at Pinckneyville. Policy and procedure are set by Administration. The offender was not placed into the cell in question until after it was cleaned and aired out.
> The issue of staff telling him to deny medications and mental health has been addressed repeatedly. All staff deny telling this offender to refuse medication. Also, he sees Mental health regularly. There is no merit to the offender's claim.

(Doc. 135, p. 42). On August 23, 2019, the Chief Administrative Officer concurred with Officer Mercier's findings. This grievance did not contain complaints about spider bites, rashes, boils, swelling, headaches, and blisters. *Id*.

On September 3, 2019, Plaintiff filed grievance, 2781-09-19, which he marked as staff conduct. (Doc. 79, p. 4-7). In this grievance, Plaintiff asked to be placed on the indigent list, and he complained that staff never gave him hygiene items while he was in segregation. Plaintiff's requested relief stated: "that this grievance be addressed to the Business office for them to be told to place me on the indigent list and for all staff assigned to my housing location to be ordered to provide me with all the human necessities that I am entitled to thank you." *Id*. at p. 6. At the very bottom and outside the provided lines of this grievance, Plaintiff further stated: "Oh, Nurse K Hess told me, on August 28, 2019,

during the 3 to 11 shift on that date and prior that after she wasn't providing me with no medical care to secure the [illegible] its more details to this nurse conduct she gave reasons that she gave before about another spider bite (left ear)." *Id.* at p. 7.  On October 18, 2019, the Administrative Review Board ("ARB") denied the grievance finding it was appropriately addressed and that "[t]he indigent list was ran on 9/13/19 and offender did not meet the indigent requirements at that time. Reports are ran monthly. Soap is available on shower days for offenders to utilize. Please submit a request to Health care for any medical issues you are experiencing." *Id.* at p. 4. Acting Director of the IDOC, Rob Jeffreys, concurred with the ARB on October 21, 2019. *Id.*

On September 16, 2019, Plaintiff filed a grievance complaining about being hit on the right side of the face by Lieutenant Johnson and that he wanted to see the healthcare unit. This grievance does not name Defendant Hess and does not contain complaints about spider bites, rashes, boils, swelling, headaches, and blisters. (Doc. 135, p. 45).

On September 26, 2019, Plaintiff put in a Nurse Sick Call request for his jaw and general "other health issues"; he also put in Nurse Sick Call requests for psychotropic medication and through Dr. Sylvia Lane. (Doc. 133-4, p. 14, 15; Doc. 135, p. 46-49, 50-51). These sick call slips do not reference the allegations in the complaint regarding spider bites, rashes, boils, swelling, headaches, and blisters.

A mental health evaluation was performed on Plaintiff on October 1, 2019. The evaluation does reference jaw pain, but does not mention spider bites, rashes, boils, swelling, headaches, and blisters. (Doc. 135, p. 78-90).

On October 3, 2019, at 2:00 p.m., Dr. Percy Myers saw Plaintiff for complaints about his jaw. Dr. Myers noted that Plaintiff reported being hit in the jaw, and that Plaintiff stated he was having difficulty opening and closing his mouth. Dr. Myers documented that Plaintiff's jaw problem should be evaluated by the dentist, Dr. Nathan Chapman. Further, Dr. Myers ordered an x-ray of Plaintiff's jaw and referred him for a consult with Dr. Chapman. (Doc. 133-2, p. 2, 8).

That same day at 3:30 p.m., psychiatrist Dr. Sylvia Lane wrote an incident report regarding Plaintiff's jaw that occurred on September 25, 2019. (Doc. 135, p. 44).

On October 3, 2019, Dr. Chapman saw Plaintiff for his jaw complaints. Dr. Chapman noted that Plaintiff had full range of motion and no difficulty using his jaw and that his pain would resolve without further medical intervention. (Doc. 133-2, p. 6).

About a week later, the x-ray of Plaintiff's jaw that Dr. Myers had ordered was performed. The findings of the x-ray were: "[o]pen and closed mouth views of right TMJ joint and lateral views bilateral TMJ submitted. AP view of TMJ submitted. There is normal translation of the right mandibular condyle on open and closed mouth views. No fracture or dislocation is demonstrated. Otherwise unremarkable." (Doc. 133-2, p. 2, 11).

On November 8, 2019, Plaintiff treated with Dr. Myers again for complaints of jaw pain. Dr. Myers noted that Plaintiff could open and close his jaw without difficulty and that his jaw was not swollen. He also noted that the x-ray of Plaintiff's TMJ was normal and that Plaintiff had pain in the TMJ area. Dr. Myers ordered that the nurses provide Plaintiff with over-the-counter analgesics to treat the TMJ as needed. (Doc. 133-2, p. 3, 9).

On February 5, 2020, an evaluation of suicide potential was performed on Plaintiff, wherein he complained about skin medical issues and staff denying him soap. Plaintiff was referred to MHP/psych, as well as to the doctor and nurse practitioner. (Doc. 135, p. 52-55).

From March 3, 2020, to March 30, 2020, Plaintiff had four separate visits with psychiatric. In the psychiatric progress notes, Plaintiff is repeatedly told to submit for medical referral/Nurse Sick Call for issues relating to "Itching skin and dental issues," and "Dental Pain as well as Itchy Skin Rash." (Doc. 135, p. 56-74).[2]

On March 17, 2020, Plaintiff had another mental health session. During this session, Plaintiff reported: "I speak out on what's going on. I'm having toothaches. I'm being denied my human necessities in showers." The notes indicate that the plan was to check into dental care and notify nursing staff as to itching; Plaintiff was also noted to have a scratch on his neck. (Doc. 135, p. 76-77).

Plaintiff does not recall putting in a Nurse Sick Call request for medical attention for alleged toenail fungus infection, nausea, and vomiting or skin rashes/tearing/lesions. (Doc. 133-4, p. 32).

From October 22, 2019, to January 15, 2020, Plaintiff wrote, and the ARB received, eight letters wherein Plaintiff complained, *inter alia,* about not being able to file

---

[2]     These psychiatric progress notes also mention that Plaintiff has a "strong persecutory delusions involving Pinckneyville" and that Plaintiff's concerns have been "investigated by Internal Affairs but with patient stating IA is also part of a group at Pinckneyville who have targeted him." (Doc. 135, p. 56, 61, 66, 71).

grievances, dental care, medical issues (including the ones alleged here), and being denied medical care. (Doc. 135, p. 91-114).

SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED. R. CIV. PROC. 56(a)). *Accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-moving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, and as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

DISCUSSION

**Count 1: Deliberate Indifference to Serious Medical Needs**

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, 414 F.3d 645, 652–653 (7th Cir. 2005)(quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (internal quotation marks omitted). *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009)(stating that "deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm—not to demand specific care. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To prevail on such a claim, a prisoner who brings an Eighth Amendment challenge of constitutionally deficient medical care must satisfy a two-part test. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The first prong that must be satisfied is whether the prisoner has shown he has an objectively serious medical need. *See Arnett*, 658 F.3d at 750; *accord Greeno*, 414 F.3d at 653. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994)(violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm.") (internal quotation marks omitted).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *See Greeno*, 414 F.3d at 653. A plaintiff need not show the individual literally ignored his complaint, just that the individual was aware of the serious medical condition and either knowingly or recklessly disregarded it. *See Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Negligence, gross negligence, or even 'recklessness' as that term is used in tort cases, is not enough." *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987) (citation omitted). Also, "mere disagreement with the course of the inmate's medical treatment does not constitute an Eighth Amendment claim of deliberate indifference." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (internal quotations and citations omitted).

For the purposes of this motion and based on the record before the Court, the Court finds Plaintiff had objectively serious medical needs. However, based on that same record and construing the evidence in the light most favorable to Plaintiff, the Court finds that there is no evidence in the record to show that Defendant Hess was deliberately indifferent to Plaintiff's serious medical needs.

Here, the Court finds that the record/evidence does not support Plaintiff's claims that Defendant Hess refused to treat him or that she caused him to be denied medical care because he filed grievances against staff. In fact, the record demonstrates the opposite. The record reveals that Defendant Hess never had a Nurse Sick Call appointment with Plaintiff, that Defendant Hess never received a request from Plaintiff to attend a Nurse Sick Call appointment, and that Defendant Hess never had a report of a medical emergency from Plaintiff. Thus, Defendant Hess was not required to medically

treat Plaintiff. Further, the record reveals that Plaintiff successfully submitted Nurse Sick Call requests seeking nursing and medical care at Pinckneyville during the relevant time period. More importantly, the record reveals that Plaintiff was treated many times for medical and mental health issues from June 2019 to June 2020. As to medical issues, Plaintiff treated with both Dr. Myers and Dr. Chapman for his jaw and dental related problems on various occasions. Dr. Myers treated Plaintiff for his jaw complaints twice, ordered an x-ray of his jaw, and referred Plaintiff to the dentist, Dr. Chapman. Dr. Chapman examined Plaintiff, evaluated his need for treatment, and ordered the nurses to provide Plaintiff over-the-counter analgesics. Thus, there is no evidence in the record that Defendant Hess caused Plaintiff to be denied medical care, either through deliberate indifference or by directing others to not provide him with medical care. Accordingly, summary judgment is granted as to Count 1.

**Count 2: First Amendment Retaliation Claim**

In order to survive summary judgment on a First Amendment retaliation claim, a plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future;" and (3) a causal connection between the two. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citation omitted). In the prison context, where an inmate is alleging retaliation, the inmate must identify the reasons for the retaliation as well as the acts claimed to have constituted retaliation; this puts those charged with retaliation on notice of the claims. *See Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). In a First Amendment

retaliation claim, a plaintiff must show that his protected activity was the reason the defendant took an action against him. *See Waters v. City of Chicago*, 580 F.3d 575, 584 (7th Cir. 2009) (internal quotations omitted). At the summary judgment stage, a plaintiff has the burden of producing evidence that his speech was at least a motivating factor for a defendant's retaliatory action; the burden then shifts to the defendant to rebut any causal inference raised by the plaintiff's evidence. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012).

The plaintiff's burden of proof is low; nevertheless, the plaintiff must show that the injury or adverse action against him would deter a person of ordinary resolve from exercising his or her right to free speech. *See Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). Harassment or other retaliatory actions which are unlikely to deter a person of ordinary firmness from exercising his or her right to free speech are not actionable. *Id.* Prisoners have a First Amendment right to make grievances about their conditions of confinement. *See Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). However, to state a claim for retaliation, a plaintiff's complaint must set forth a "chronology of events from which retaliation may plausibly be inferred." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000)(quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)).

Plaintiff's filing of grievances against Defendant Hess is protected activity under the First Amendment, which thus meets the first prong of the retaliation test. However, Plaintiff fails to satisfy the causal connection prong. According to Plaintiff, Defendant Hess refused to provide medical treatment to him and told staff not to provide him with medical treatment because of all the grievances against staff he had been filing. The

record shows that Plaintiff did receive medical care and mental health care during the relevant time period alleged in the complaint. Specifically, the record shows that Dr. Myers and Dr. Chapman medically treated Plaintiff during the time frame that Plaintiff claims Defendant Hess instructed staff not to provide Plaintiff with medical care. The medical treatment indicates that Plaintiff did not suffer a deprivation or other retaliatory injury as a result of him filing grievances against staff. Additionally, the evidence shows that Defendant Hess did not see Plaintiff on Nurse Sick Call. Thus, this evidence belies Plaintiff's statements that he was denied medical care because of her. As Plaintiff continued to receive medical treatment despite apparently filing numerous grievances against staff, the Court finds that a causal connection cannot be shown. Accordingly, summary judgment is granted with respect to Count 2.

### CONCLUSION

Accordingly, the Court **GRANTS** the motion for summary judgment (Doc. 133). The Court **FINDS** in favor of Defendant Caitlin Hess and against Plaintiff Joshua Lee Hoskins, on Counts 1 and 2 of the Complaint. Further, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and close the case.

In an abundance of caution, and noting Plaintiff's *pro se* status, the Court advises Plaintiff as follows. Plaintiff has two means of contesting this order: (1) he may request this Court review this order; or (2) he may appeal the order to the Seventh Circuit Court of Appeals.

If Plaintiff chooses to request this Court to review this order, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e).

Plaintiff *must* file the motion within twenty-eight (28) days of the entry of judgment; the deadline *cannot* be extended. *See* FED. R. CIV. PROC. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *See Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Northwestern Med. Faculty Foundation, Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012)(stating that a party must establish either manifest error of law or fact, or that newly discovered evidence precluded entry of judgment in order to prevail on a Rule 59(e) motion) (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be tolled. *See* FED. R. APP. PROC. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. *See* FED. R. APP. PROC. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). However, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not toll the time for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transportation, Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819–820 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.

In contrast, if Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal from the entry of judgment or order appealed from *within 30 days*. *See* FED. R. APP. PROC. 4(a)(1)(A) (emphasis added). The deadline can be extended for a short

time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. *See* FED. R. APP. PROC. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012)(explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011)(explaining the excusable neglect standard).

Plaintiff may appeal to the Seventh Circuit by filing a notice of appeal in this Court. *See* FED. R. APP. PROC. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. *See* FED. R. APP. PROC. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion"). *See* FED. R. APP. PROC. 24(a)(1). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. PROC. 24(a)(1)(C). If Plaintiff is allowed to proceed *in forma pauperis* on appeal, he will be assessed an initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2).

**IT IS SO ORDERED.**

**DATED:  March 24, 2023.**

Digitally signed by Judge Sison
Date: 2023.03.24 11:42:10 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**